# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## 3:14-cv-225-RJC-DCK

| | |
|---|---|
| **TITLE TRADING SERVICES USA, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| **ARINDAM KUNDU, COASTAL** ) | |
| **MANAGEMENT LLC, MARC PRESTON,** ) | |
| **SYED SAIF ASHRAF, DEREK CHIU, and** ) | |
| **ELIOT T. SMITH,** ) | |
| ) | |
| **Defendants.** ) | |

**THIS MATTER** comes before the Court on Plaintiff Title Trading Services USA's (Title) Motions for Temporary Restraining Order and Preliminary Injunction (Doc. 5), which was filed on April 29, 2014. Plaintiff also filed a verified Complaint on the same day. (Doc. 1). At present, none of the six named Defendants have been served in this case.

### I. BACKGROUND

Alleging irreparable harm at the hands of Defendants, Plaintiff seeks a temporary restraining order or preliminary injunction from this Court enjoining Defendants from various actions involving the use of trade secret information obtained illegally from Plaintiff Title. Specifically, Plaintiff has alleged a multitude of state and federal claims against Defendants, including: (1) breach of contract; (2) tortious interference with contract; (3) interference with prospective economic advantage; (4) misappropriation of trade secrets and confidential and proprietary information; (5) breach of fiduciary duty; (6) conversion and theft; (7) fraud by omission and constructive fraud; (8) conspiracy; (9) violation of federal and state racketeering

(RICO) statutes; (10) and unfair and deceptive trade practices. Plaintiffs allege that this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1332 and 1367.

Plaintiff has alleged the following facts, which are summarized here in briefest form: Title is a financial technology and principal trading firm located in Charlotte, North Carolina. Plaintiff's business model is based on the creation and utilization of trading technology, namely software programs and hardware configurations, which Plaintiff develops and uses in accordance with various trading strategies. Defendant Arindam Kundu (Kundu), a citizen of India, was employed by Title Trading from July 2009 until March 2014, when he was terminated for allegedly passing proprietary information regarding technology and trading strategies to Defendants, despite having signed an Employment Agreement in which he agreed, among other things, not to reveal trade secrets or confidential information to unauthorized parties. Specifically, Kundu was instrumental in the development of the "RefArb Trading Strategy," (RefArb Strategy) a trading platform involving a computer program that searches various exchanges for price imbalances between opening and closing prices. Kundu's contribution to the RefArb Strategy involved writing source code that allowed for the execution of transactions (Execution Software) and implementation of the trading platform (Implementation Software). Title alleges that it took reasonable steps to guard the secrecy of confidential information such as the RefArb strategy, including protecting, via passwords, access to such programs and placing restrictions upon its use and disclosure.

Plaintiff alleges learning about Kundu's illicit activity from an anonymous phone call. Immediately following, Plaintiff conducted an internal investigation, which confirmed that Kundu had passed along proprietary information without authorization. Confronted with the allegations, Kundu confessed and noted that he made hundreds of thousands of dollars in profit. Plaintiff

2

alleges that Kundu promised to cooperate, but he has not honored this agreement.

According to the Complaint, Kundu passed confidential information regarding the RefArb Strategy, including copies of Title's code to various computer programmers not associated with Plaintiff. Among those persons to whom Kundu passed information were: Defendant Syed Saif Ashraf, who provided operating capital and physical assets such as servers in order to test and house the technologies obtained from Title;[1] Derek Chiu (Chiu); and Eliot Smith (Smith). This group: Kundu, Ashraf, Chiu and Smith (collectively: Karma Defendants) formed Karma Technologies for the purpose of utilizing Plaintiff's proprietary information. To that end, the Karma Defendants entered into a partnership relationship with Coastal Management, LLC (Coastal) a financial firm that provided upwards of $20,000,000 in buying power to place proprietary trades for the Karma Defendants.[2] Plaintiff alleges that Coastal had sufficient information available to it that, even a minimum of due diligence would have alerted it to the fact that the Karma Defendants were utilizing programs and technologies that were protected trade secrets and which they did not have the legal right to use. Plaintiff alleges that Defendants, as a collective group, effected trades by utilizing strategies and technologies developed by Plaintiff, including the RefArb strategy, implementing software and execution software.

Finally, the Complaint contains a Declaration from George Elio, President of Title Trading, stating that he has reviewed the Complaint and attests to the facts contained in it. At present, Defendants have not filed any responses with this Court.

---

[1] Plaintiff alleges that it is in possession of video footage of Kundu and Ashraf exchanging information and modifying computer code. (Id. ¶38).
[2] Plaintiff alleges that it is in possession of an email dated August 7, 2012 in which Preston and other Coastal Principals communicated with the Karma Defendants about the "need to get the 50/50 arrangement in writing." (Id. at ¶43c).

## I. DISCUSSION

Rule 65(b) provides that, upon a proper showing, a court may issue a temporary restraining order without notice to the adverse party. FED. R. CIV. P. 65(b). Because Defendants have not been provided adequate notice and time to respond, the instant motion will be regarded as one for a temporary restraining order. "[W]hether an interlocutory injunction is labeled a TRO or a preliminary injunction is not of particular moment, so long as the opposing party is given notice and an opportunity to oppose that is commensurate with the duration of the injunction." Ciena Corp. v. Jarrad, 203 F.3d 312, 320 (4th Cir. 2000). A "preliminary injunction preserves the status quo pending a final trial on the merits, [while] a temporary restraining order is intended to preserve the status quo only until a preliminary injunction hearing can be held." Hoechst Diafoil Co. v. Nan Ya Plastics Corp., 174 F.3d 411, 422 (4th Cir. 1999).

### A. Temporary Restraining Order

A temporary restraining order is an "emergency procedure and is appropriate only when the applicant is in need of immediate relief." 11A Charles Wright, Arthur Miller & Mary Kane, *Federal Practice and Procedure* § 2951 (2d ed). It is an "extraordinary and drastic remedy" never awarded as a matter of right. Munaf v. Geren, 553 U.S. 674, 689-90 (2008) (citations omitted). In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding such request." Amoco Production Co. v. Gambell, 480 U.S. 531, 542 (1987). An injunction is a matter of equitable discretion; it does not follow from success on the merits as a matter of course. Weinberger v. Romero-Barcelo, 456 U.S. 305, 313 (1982) ("[A] federal judge sitting as chancellor is not mechanically obligated to grant an injunction

for every violation of law.").

A plaintiff seeking a temporary restraining order must establish four elements, including that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in absence of preliminary relief; (3) the balance of equities tips in its favor; and, (4) an injunction is in the public interest. Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008).

Notwithstanding the one-sided nature of the material presented in this matter, the Plaintiff has made a cogent case for success on the merits for several of its eighteen (18) claims, including breach of contract, conversion and federal and state RICO claims. Examining one such claim, the Court finds that Plaintiff has demonstrated a likely success on the merits for as to its claim for misappropriation of trade secrets and confidential information. North Carolina's Trade Secrets Protection Act defines misappropriation as the "acquisition, disclosure, or use of a trade secret of another without express or implied consent, unless such trade secret was arrived at by independent development, reverse engineering, or was obtained from another person with a right to disclose the trade secret." N.C. GEN. STAT. § 66-152(1). A trade secret is defined as follows:

> [B]usiness or technical information, including but not limited to a formula, pattern, program, device, compilation of information, method, technique, or process that:
>
> a. Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and
>
> b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

N.C. GEN. STAT. § 66-152(3).

Here, Plaintiff has alleged that Kundu, without Plaintiff's authorization, passed along the RefArb Strategy, a program involving computer code and trading strategies not known to the public, to various persons who used this program to conduct financial transactions over an extended period of time.

Plaintiff has likewise made a clear showing of irreparable harm including injuries associated with the further dissemination and use of Plaintiff's trade secrets as the extent of such dissemination is difficult to ascertain. For the limited purposes of the restraining order, this showing is sufficient to establish irreparable harm.

The balance of equities presents no great concerns as enjoining Defendants from use of Plaintiff's proprietary trade secret materials does not threaten the legitimate business activities of any Defendant. Likewise, an injunction preventing Defendants from deleting, altering or otherwise destroying Plaintiff's Implementing Software and Execution Software does not place an onerous burden on Defendants. "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" Winter, 555 U.S. at 24 (quoting Amoco Production, 480 U.S. at 542). Here, the balance of equities tips clearly towards the issuance of relief to Plaintiff.

Finally, the public interest favors an injunction in this case as the public has a clear interest in the protection of trade secret as evidenced by the fact that Congress has criminalized actions analogous to those alleged in this case. See Economic Espionage Act, 18 U.S.C. § 1832.

The Court grants Plaintiff's motion for a temporary injunction under Federal Rule of Civil Procedure 65(b). Plaintiff has requested a jury trial and the Court anticipates a date in the future when the merits of Plaintiff's factual allegations can be determined. The temporary order is

designed to keep the status quo pending a hearing to determine whether to grant a preliminary injunction lasting until a determination on the merits can be made.

However, the Court does not grant all of the requests of Plaintiff, but only those limited to the preservation, including the prevention of disclosure, of all Plaintiff's trade secrets as possessed by Defendants. The Court declines at this time to rule on Plaintiff's requests to have such property returned to it, but will consider this motion when determining whether to issue a preliminary injunction. "The traditional office of a preliminary injunction is to protect the status quo and prevent irreparable harm during the pendency of a lawsuit ultimately to preserve the court's ability to render a meaningful judgment on the merits." See, e.g., Omega World Travel, Inc. v. Trans World Airlines, 111 F.3d 14, 16 (4th Cir. 1997). "Indeed, the maintenance of the status quo is justified only insofar as it aids the court in granting final relief." Hazardous Waste Treatment Council v. South Carolina, 945 F.2d 781, 788 (4th Cir. 1991).

**CONCLUSION**

Having considered the four factors spelled out in Winter, the Court finds that an order under Rule 65(b) temporarily restraining Defendants is appropriate to preserve the status quo until the parties can be heard by this Court on the issue of whether to issue a preliminary injunction.

**IT IS, THEREFORE, ORDERED that:**

1. Plaintiff's **Motion for a Temporary Restraining Order** under Federal Rule of Civil Procedure 65(b)(1) (Doc. 4) is **GRANTED**.

2. Each named Defendant, including: Arindam Kundu, Coastal Management, LLC, Marc Preston, Syed Saif Ashraf, Derek Chiu and Eliot Smith along with any Defendant Affiliate or Confederate are hereby **ORDERED** to preserve, and not

alter, delete or otherwise modify any Title trade secrets (as defined in ECF Doc. 7-at 10), Kundu Generated IP, Implementing Software (as defined in Doc. 7-1 at 10), and Execution Software (as defined in Doc. 7-1 at 10), however embodied which any of them may possess or control; and

3. Each named Defendant (as listed above) and any Defendant Affiliate or Confederate are **RESTRAINED FROM and HEREBY ORDERED** to refrain from any further use, disclosure, or other communication of any sort regarding the contents of, any Title Trade Secret, Kundu Generated IP, Implementing Software, and Execution Software, however embodied and on whatever servers or computers any of such can be located; and

4. Each named Defendant (as listed above) and any Defendant Affiliate and Confederate are **RESTRAINED FROM and HEREBY ORDERED** to refrain from, the expenditure, distribution, commitment, pledge, transfer, use or dissipation, of any money or property that is, constitutes or contains, the results of or proceeds from, any profits generated from the use of any Title Trade Secrets, Kundu Generated IP, Implementing Software, or Execution Software without leave of court.

5. This Temporary Restraining Order will expire on **Friday May 16, 2014 at 10:00 a.m.,** unless within such time it is extended for good cause shown, or unless defendants consent to an extension. A hearing on whether to convert this Order to a Preliminary Injunction is set for the same date and time unless within such time it is continued by Order of the Court upon motion of either or both of the parties

for good cause shown.

6. This order will be deemed effective immediately upon individual Defendants upon proper service of process of such Defendant.

7. All restraints ordered herein will remain in full force and effect until the expiration of this order or unless specifically revoked by this Court.

8. A copy of this order will be immediately served by the United States Marshal on Defendants.

Signed: May 2, 2014

Robert J. Conrad, Jr.
United States District Judge